(December 15, 2005)

■ DANILIO SANTOS, an Infant, by His Mother and Natural Guardian, LUISA ALMANZAR, Appellant, v BALDWIN-ENDICO REALTY ASSOCIATES, Respondent. [806 NYS2d 197]—

Judgment, Supreme Court, Bronx County (Betty Owen Stinson, J.), entered on or about June 21, 2004, which granted defendant's motion for summary judgment and dismissed the complaint, affirmed, without costs. Appeal from order, same court and Justice, entered May 27, 2004, dismissed, without costs, as subsumed in the appeal from the judgment.

Plaintiff failed to raise an issue of fact as to whether defendant had constructive notice of the alleged dangerous condition on the roof (*see Basso v Miller*, 40 NY2d 233, 240-241 [1976]).

Even if, as plaintiff argues, the presence of broken windows, garbage, and graffiti on defendant's property suggested the "presence of children frequenting the property," this does not raise an issue of fact that defendant had constructive notice that children would be climbing up to and playing on the roof of defendant's building. Moreover, it was not reasonably foreseeable that the 14-year-old plaintiff would trespass on defendant's roof so as to impose a burden on defendant landlord to check his roof excessively (*see id.*; *Bombard v Central Hudson Gas & Elec. Co.*, 205 AD2d 1018, 1020 [1994], *lv dismissed* 84 NY2d 923 [1994]). Concur—Tom, Friedman and Marlow, JJ.

Buckley, P.J. and Saxe, J., dissent in a memorandum by Saxe, J., as follows: I would reverse and deny defendant's motion for summary judgment. Defendant failed to satisfy its burden of showing that as a matter of law it did not breach its duty as a property owner to maintain its property in a reasonably safe condition under the given circumstances. Moreover, plaintiff's evidence creates questions of fact as to whether the exercise of reasonable care would have disclosed the alleged defect in the roof, and the foreseeability of plaintiff's presence there.

It is alleged that on January 22, 2000, at about 11:00 A.M., plaintiff Danilio Santos, then 14 years old, ventured onto the subject property, a vacant warehouse building, along with his then 18-year-old brother and two friends, aged approximately 11 and 18. The building was a two-story cinderblock and brick warehouse with a flat roof, located in an area zoned for industrial and residential use. When defendant Baldwin-Endico Realty Associates bought the property in 1997, the building was unoccupied, and it remained that way through the time of the accident. The building was described as abandoned and "beat up," with broken windows. Photographs depicted the building as surrounded by overgrown weeds, boarded-up windows and graffiti-scrawled exterior walls.

The 14-year-old plaintiff and the others walked onto the property, which was neither gated nor fenced, and gained access to the roof by climbing on top of a large pile of debris located at the side of the building, from the top of which they were able to reach the ladder attached to the wall of the building. Danilio, who measured five feet, four inches at the time of the incident, testified that it was "easy" to get to the roof.

Danilio's brother testified that he had been to the rooftop between 10 and 15 times since November or December 1999, while Danilio testified that he had been on the roof thirty times prior to the accident.

Danilio was standing at or near a small hole in the roof when

the portion of the roof on which he was standing gave way and he fell through to the floor below, fracturing both wrists and a femur.

It cannot properly be concluded as a matter of law that defendant is not liable for plaintiff's injuries. Initially, defendant's submissions in support of its motion for summary judgment failed to demonstrate a right to summary judgment dismissing the action. The testimony of the principal owner, Michael Endico, was so bare, self-serving and unsupported as to be insufficient to justify the legal conclusion that defendant lacked actual or constructive notice. Endico testified that he had never seen children playing on the subject premises, and was not aware of any complaints that children were trespassing upon his property. He also stated that although he had never inspected the roof himself, he inspected the interior of the building every two or three months for possible flooding, and had employees visit the property to clear debris that other people dumped there. He also said employees or contractors had repaired leaks in the roof in the past.

It is noteworthy that neither Endico nor the employee who managed the company's records indicated any personal knowledge of the condition of the roof at any time since the building was purchased by Baldwin-Endico in 1997. Furthermore, defendant is utterly unable to document either the claimed frequency with which the building was examined or even that the claimed repairs were made, inasmuch as the invoices and building repair records that Endico indicated would document them were purportedly either missing or lost in a flood. Indeed, in contrast to Endico's testimony that he himself inspected the building, the testifying company employee, when asked whether anyone from Baldwin-Endico visited the building on a periodic basis to see what it needed, stated that Mike Endico would ask a friend to go down and check the building. Nor did the ledger produced by Baldwin-Endico contain any indication that corporate checks were paid out for any building repair work between December 1997 and January 22, 2000.

A property owner has a duty to maintain the premises in a reasonably safe condition in view of the circumstances (*Basso v Miller,* 40 NY2d 233, 241 [1976]). While defendant relies upon the rule that a building owner will not be held liable for personal injuries caused by a defective condition if the owner neither created the condition nor had actual or constructive notice of the condition for a long enough period of time to correct it (*see Richardson v Simone,* 275 AD2d 576 [2000]), here an issue of fact must be said to remain as to whether defendant lacked

constructive notice of the alleged dangerous condition (*see Bielak v Plainville Farms*, 299 AD2d 900 [2002]). Specifically, there is a question as to whether the owner failed to timely ascertain that which it should have discovered as to the condition of the roof.

The asserted lack of any affirmative information that children were regularly climbing up to the building's roof does not immunize defendant; in view of the testimony by plaintiff and his brother as to how often they trespassed there, and how easy it was for the boys to gain access to the roof, the question of what the owner should have known on that score presents a question of fact. Whether there was reason to anticipate plaintiff's presence on the property is highly relevant to determining the issue of whether the harm was foreseeable (*Basso v Miller, supra*).

Furthermore, in view of the testimony offered by plaintiff that there was no fence or gate barring entry onto the property, and that access to the ladder and the roof was made easy by the large pile of debris left on the property next to the ladder, there is a question as to whether "by maintaining [the property] without any safeguards, the defendant created an unreasonable and foreseeable risk of death or serious injury to trespassing children known to frequent the area" (*Barker v Parnossa, Inc.*, 39 NY2d 926, 927 [1976]).

Defendant's argument relying upon the assertion that Danilio fell due to a misuse of a nondefective rooftop skylight which was readily observable (citing *Kurshals v Connetquot Cent. School Dist.*, 227 AD2d 593 [1996] and *Clifford v Sachem Cent. School Dist. at Holbrook*, 271 AD2d 470 [2000], *lv denied* 95 NY2d 759 [2000]), does not entitle it to summary judgment. Indeed, an issue of fact remains as to whether a skylight was even present, let alone whether plaintiff fell through one. The term "skylight" was introduced by defendant's counsel at the deposition of plaintiff's brother, and while the brother seemed to agree that plaintiff was on a "skylight," he also seemed to consider the term to mean a two-inch-wide hole in the roof through which he could see into the building, and asserted that no portion of it was made of glass.

In view of the foregoing, defendant's motion for summary judgment should have been denied.